

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00359-CV

PHILIP GREGORY BYRD, LUCY                                    APPELLANTS
LEASING CO., LLC, AND PGB AIR,
INC.

V.

PHILLIP GALYEN, P.C. D/B/A                                    APPELLEES
BAILEY & GALYEN ATTORNEYS
AT LAW AND R. KEITH SPENCER

----------

### FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

In this appeal, we are asked to extend the sole-proximate-cause bar to legal-malpractice claims arising in the context of a contempt order entered in a civil case. We decline to do so and reverse the trial court's order granting Appellees a partial summary judgment and remand the case to the trial court for further proceedings.

# I. BACKGROUND

## A. DIVORCE ACTION AND CONTEMPT ORDER FOR DISCOVERY VIOLATIONS

In 2000, Appellant Philip Gregory Byrd retained Bourland, Wall & Wenzel, P.C. (Bourland), to form Appellant PGB Air, Inc. (PGB), as a corporate entity and to convert Appellant Lucy Leasing Co., LLC (Lucy Leasing), into a single-member, limited-liability company with Byrd as the sole owner. On April 24, 2006, Byrd retained Jerry Buckner to file a divorce action against Byrd's wife, Nancy Ann Simenstad. In November 2006, Simenstad served interrogatories and requests for production on Byrd. In December 2006, Appellee Phillip Galyen, P.C., d/b/a/ Bailey & Galyen Attorneys at Law (Bailey & Galyen) bought Buckner's practice and assumed Byrd's divorce action.

On February 8, 2007, Simenstad filed a motion to compel discovery and for sanctions based on Byrd's failure to respond. On February 13, 2007, Bailey & Galyen's billing records show that interrogatory answers were prepared "based on the information sent in by [Byrd]." Throughout March, April, and May 2007, Bailey & Galyen continued to prepare, revise, and review the discovery responses, and Byrd continued to provide "more" and "new" information. Byrd signed interrogatory answers prepared by Bailey & Galyen on April 3, 2007; however, Bailey & Galyen never served these answers on Simenstad. In June 2007, Appellee R. Keith Spencer, an attorney with Bailey & Galyen, assumed the main responsibility for Byrd's divorce action. The only discovery response ever

2

filed by Bailey & Galyen to Simenstad's discovery requests was a "supplemental" response that provided "bank statements" on May 14, 2007.

On September 11, 2007, the trial court ordered Byrd to respond to Simenstad's discovery requests no later than October 1, 2007, and to appear in court at a later date "for the purposes of determining his compliance with this order and for the imposition of all applicable sanctions." At a subsequent hearing on October 29, 2007, Byrd testified that he had provided some responsive documents to Spencer but admitted that those documents had not been produced to Simenstad during discovery. Byrd asserted that because he did not have actual, physical possession of many of the requested documents, Appellees told him that he did not have to produce them or try to obtain copies of the documents.[1] Byrd also testified that he had withdrawn funds obtained from a sale of community-property bank stock and made a capital contribution to Lucy Leasing, which violated the trial court's temporary orders. It was clear at the hearing that Byrd was frequently evasive in answering questions and that the trial court had lost patience with the continued noncompliance with the trial court's temporary and discovery orders. The trial court signed an "Interim Order" setting a hearing for November 5, 2007 to (1) "[c]onsider the appropriate sanctions for [Byrd's] failure to comply with the discovery requested and ordered" and (2) allow Byrd to show cause why he should not be held in contempt "for his failure to

---

[1]Byrd did state that he was willing to execute the required waivers so that Simenstad could obtain the requested records from the involved entities.

comply with the court's discovery and temporary orders with regard to alienating or disposing of assets."

At the November 5 hearing, Spencer argued that Byrd "produced all of the documents he has" and that Spencer "received a box that [Byrd] found . . . of some envelopes and mailings and . . . a few receipts," which were being copied and inventoried to produce to Simenstad.  Spencer also stated that Byrd had asserted that "there are a quantity of documents that are in a filing cabinet . . . in the marital residence . . . that [Byrd] does not have access to."  Simenstad strenuously disputed Spencer's assertions that Byrd produced all he could and pointed out that Byrd had misappropriated community assets by withdrawing the funds from the stock sale.  Simenstad specifically requested that Byrd be held in contempt for violating the trial court's orders compelling discovery:

> And it's my estimation he's earned a trip to jail, and he needs to spend some time in jail and think about the fact that this is not a game, and that he's got to follow the rules, and he's got to follow the Court's order.
>
> Now, if 30 days in jail or so won't do that, I don't know what will.  But my recommendation is he spends about a month in jail, and then let's give him some time to try to follow the rules again.  And if he doesn't want to do that, let's put him back in jail again.
>
> . . . .
>
> But Mr. Byrd is ultimately responsible for all of this.  He's the one who hasn't complied.  He hasn't cooperated with this lawyer, he didn't cooperate with the lawyer he had before.  And [Simenstad] is absolutely at a loss to have a fair divorce trial until he's brought to bear to produce these documents.

4

In a written order signed November 5, 2007, the trial court sanctioned Byrd and struck his pleadings; prohibited him from "making any claim of separate property, economic contribution, reimbursement, or any claim for a disproportionate division of property in his favor"; and committed him to jail for thirty days "for his failure to comply with the Court's order [compelling discovery responses]." *See* Tex. R. Civ. P. 215.1(d), 215.2(b).

That same day, Spencer filed on Byrd's behalf a notice of appeal, appealing the trial court's sanctions order. Three days later on November 8, 2007, Spencer filed on Byrd's behalf a petition for writ of habeas corpus in this court alleging illegal restraint. This court denied the habeas-corpus petition on November 12, 2007. *In re Byrd*, No. 2-07-387-CV, 2007 WL 3408651, at *1 (Tex. App.—Fort Worth Nov. 12, 2007, orig. proceeding) (mem. op.). *See generally* Tex. Gov't Code Ann. § 22.221(d) (West 2004) (granting courts of appeals jurisdiction over habeas matters where contempt restraint arose from violation of court order in a civil case). On November 29, 2007, the trial court modified the sanctions order and suspended Byrd's commitment "on the condition that he pay . . . the sum of twenty thousand dollars for the benefit of [Simenstad] on or before 5:00 p.m. on November 30, 2007." Byrd timely paid the money and was released.

Also in November 2007, Simenstad added Lucy Leasing and PGB as parties to the divorce action, and Bailey & Galyen and Spencer began

5

representing Lucy Leasing and PGB.[2]  On January 24, 2008, this court dismissed Byrd's appeal for want of jurisdiction because the sanctions order was not an appealable order.  *Byrd v. Byrd*, No. 2-07-404-CV, 2008 WL 204511, at *1 (Tex. App.—Fort Worth Jan. 24, 2008, no pet.) (mem. op.).  A final divorce decree was entered on August 11, 2008.  Byrd declared bankruptcy on January 27, 2010.

## B.  SUIT FOR LEGAL MALPRACTICE

In August 2010, Byrd, Lucy Leasing, and PGB (collectively, Appellants) filed a legal-malpractice suit against Bailey & Galyen, Spencer, Bourland, and Buckner.[3]  Bourland was dismissed as a defendant on November 9, 2012.  On June 25, 2013, Appellants filed an amended legal-malpractice petition raising claims for negligence, breach of fiduciary duty, and fraud against Bailey &

---

[2]Byrd, Lucy Leasing, and PGB allege that this change in representation occurred after Bailey & Galyen and Spencer, while Byrd was in jail, misled Bourland and informed Bourland that Byrd had hired them to replace Bourland.

[3]Around this same time, Byrd filed suit against Simenstad and her divorce attorneys raising claims essentially attacking their conduct during the divorce proceedings.  The trial court dismissed Byrd's claims on summary judgment.  On appeal, this court affirmed the dismissal of Byrd's claims for fraud, conspiracy, conversion, defamation, and intentional infliction of emotional distress against Simenstad; reversed the summary judgment as to Byrd's claims against Simenstad's attorneys for fraud, conspiracy, and aiding and abetting; and affirmed the remainder of the judgment.  *See Byrd v. Vick, Carney & Smith LLP*, 409 S.W.3d 772, 782–83 (Tex. App.—Fort Worth 2013, pet. filed).  After Simenstad's attorneys filed a petition for review in the Texas Supreme Court, the supreme court requested a response, and the petition remains pending in that court.  *See* Tex. R. App. P. 53.3.

6

Galyen, Spencer, and Bourland.[4]  *See generally Deutsch v. Hoover, Bax &*

*Slovacek, L.L.P.*, 97 S.W.3d 179, 184–85 n.1 (Tex. App.—Houston [14th Dist.]

2002, no pet.) (explaining legal-malpractice claim is raised through allegations of

negligence, fraud, breach of fiduciary duty, breach of contract, and the like in

order to seek redress for attorney's actions or inactions during representation).

Appellants' negligence claim against Bailey & Galyen and Spencer alleged the

following negligent acts occurred during the divorce proceeding:

> (1) failing to provide adequate legal representation to protect Byrd's interests, including the failure to keep Byrd "apprised of the status of the case";
>
> (2) failing to file responses to Simenstad's discovery requests, "causing sanctions" against Byrd;
>
> (3) failing to request discovery from Simenstad, "resulting in sanctions" against Byrd;
>
> (4) failing to object or respond to Simenstad's motion to compel and for sanctions, "causing . . . Byrd to be incarcerated and terminating his right to make a claim for separate property";
>
> (5) "incorrectly drafting a Writ of Habeas Corpus and Notice of Appeal causing . . . Byrd's prolonged incarceration";

---

[4]It appears the inclusion of Bourland as a defendant in the amended petition was an error by Appellants because they continue to assert on appeal that Bourland was dismissed as a defendant pursuant to settlement.  But Appellants raised a negligence claim against Bourland in their amended petition, which was filed after the dismissal order.  Because the trial court's prior dismissal was with prejudice, however, Appellants could not reassert their legal-malpractice claims against Bourland.  *See De La Rosa v. Vasquez*, 748 S.W.2d 23, 26 (Tex. App.—Amarillo 1988, no writ) (explaining effect of dismissal pursuant to agreement of parties); *Haliburton v. Riley*, 589 S.W.2d 821, 822 (Tex. Civ. App.—Waco 1979, no writ) (same); *see also* Tex. R. Civ. P. 162.

(6) falsely stating to Bourland that he no longer would represent Lucy Leasing and PGB;

(7) interfering with Byrd's "opportunity to consult" with Bourland;

(8) failing to respond to Simenstand's discovery requests;

(9) encouraging Byrd to "restrain" Lucy Leasing and PGB;

(10) failing to advise Byrd that Simenstad did not post a sufficient bond to justify a temporary restraining order against Lucy Leasing and PGB;

(11) failing to challenge Simenstad's "Motion for Ex Parte Relief" that sought to terminate Byrd's visitation rights, which resulted in Byrd's "inability to see his children until after the Final Divorce Decree was signed"; and

(12) failing to object or respond to Simenstand's failure to follow the trial court's temporary orders.

Appellants further alleged that Appellees' advice to Byrd regarding how the proceeds from the bank-stock sale could be handled and their misstatements to Bourland about their representation of Lucy Leasing and PGB amounted to a breach of the fiduciary duty Appellees owed Appellants pursuant to the attorney-client relationship and constituted a fraud. Finally, Appellants sought the equitable remedy of forfeiture of the attorneys' fees. *See Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999).

Shortly before Appellants amended their petition, Appellees filed a no-evidence motion for summary judgment contending, among other arguments, that because Byrd had been convicted and incarcerated and had not been exonerated, which was the sole proximate cause of any damages to Byrd, any recovery by Appellants "for damages for legal malpractice arising from that

8

conviction" was barred. *See Peeler v. Hughes & Luce*, 909 S.W.2d 494, 497–98 (Tex. 1995) (explaining sole-proximate-cause bar in context of criminal conviction); *see also* Tex. R. Civ. P. 166a(i). Appellees also raised a no-evidence motion and a traditional motion for summary judgment, arguing their right to judgment as a matter of law as to the merits of Appellants' claims. *See* Tex. R. Civ. P. 166a(c), (i).

The trial court granted Appellees' no-evidence motion "in part on [Appellants'] defense of sole proximate cause" as stated in *Peeler* as to "all damages alleged by [Appellants] to have been caused by Philip Byrd's conviction for criminal contempt." The trial court specified that it was granting Appellees' argument "as set forth in paragraph number 1, under the Grounds for No Evidence Summary Judgment at page 4 of [Appellees'] Motion." Appellees' paragraph 1 on page 4 of Appellees' summary-judgment motion sought judgment as a matter of law because "[t]here is no evidence that [Byrd] has been exonerated on direct appeal, through post-conviction relief, or otherwise from his conviction for criminal contempt, which is a necessary element of any claim for damages for legal malpractice arising from that conviction."

The trial court did not rule on the remainder of Appellees' summary-judgment motions regarding Appellants' claims seeking damages not arising from the contempt order. Based on the parties' agreement to an interlocutory appeal, the trial court further permitted Appellants to immediately appeal the interlocutory order. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 1051, § 1, 2005 Tex. Gen.

9

Laws 3512, 3512–13 (amended 2011 & 2013) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (West Supp. 2013)); Tex. R. App. P. 28.2(a), 71 Tex. B.J. 676 (Tex. 2008) (current version at Tex. R. App. P. 28.3, which applies only to appeals in cases filed in the trial court on or after Sept. 1, 2011).

## C. AGREED INTERLOCUTORY APPEAL

In an accelerated appeal from an interlocutory order, we may address only those claims disposed of in the challenged interlocutory order and agreed upon to be presented. *See generally* Tex. R. App. P. 28.2(c), 71 Tex. B.J. 676 (Tex. 2008) (requiring statement of issues presented in notice of appeal as prerequisite to appellate jurisdiction over agreed appeal from interlocutory order). Here, no party addresses which specific claims survived the trial court's interlocutory order, and the trial court's order does not clearly delineate which claims were not affected by its application of the sole-proximate-cause bar.

During the summary-judgment hearing, the trial court indicated that all of Appellants' negligence claims would be barred under *Peeler*, and Appellants' counsel averred that Appellants' claims for breach of fiduciary duty and fraud would not be affected by the application of *Peeler*. In their briefs on appeal, Appellants and Appellees agree that Appellants' claims for breach of fiduciary duty and fraud were not addressed by the trial court's interlocutory order because those claims do not seek damages resulting from Byrd's incarceration for contempt. They further seem to agree, however, that all of Appellants' legal-malpractice claims grounded in negligence were dismissed by the trial court's

10

interlocutory order. Appellants' notice of appeal states that the agreed appellate issue is whether *Peeler* applies "to bar plaintiffs' recovery of damages arising from malpractice committed during a prior civil case."

It is clear that the trial court did not apply *Peeler* to bar Appellants' claims for breach of fiduciary duty or fraud. It appears that the trial court and the parties believed that all of Appellants' legal-malpractice claims grounded in negligence were barred by *Peeler*. However, several of Appellants' negligence allegations do not allege damages "arising from" Byrd's incarceration for contempt. Only Appellants' negligence allegations 2, 3, 4, 5 and 8 listed above led to or resulted from the trial court's contempt order for Byrd's failure to respond to Simenstad's discovery requests. Appellants' remaining negligence allegations are separate and distinct from Appellees' actions surrounding the contempt order. Therefore, these claims would not be affected by *Peeler*, to the extent it applies, and were not subject to the trial court's interlocutory order. For the remainder of this opinion, any reference to "negligence claims" includes only those negligence claims that alleged actions or inactions surrounding the remedial-contempt order, including the attempted appeal and habeas-corpus action filed as a result of the remedial-contempt order.

## II. DISCUSSION

On appeal, Appellants raise a single issue: whether the trial court erred by concluding that the sole-proximate-cause bar as announced in *Peeler* operated to bar Appellants' negligence claims. Appellants argue that whether *Peeler*

11

applies to bar legal-malpractice claims arising from a civil action is an issue of first impression. *See Dugger v. Arredondo*, 408 S.W.3d 825, 833 (Tex. 2013) (recognizing "we have not directly addressed" application of *Peeler* to "civil defendants bringing legal malpractice actions"). Appellees assert that because Byrd's conduct was criminal, his legal-malpractice claims clearly are barred under *Peeler* even though Bryd's conduct arose in the context of a civil proceeding. However, all parties agree that *Peeler* bars legal-malpractice suits brought by a convicted criminal defendant absent exoneration. Where the parties differ is on the question of whether Byrd was criminally convicted such that the sole-proximate-cause bar applies to foreclose Appellants' negligence claims against Appellees. Appellants argue Byrd was not criminally convicted as contemplated by *Peeler*; Appellees argue Byrd was so convicted.

## A. *PEELER* AND ITS PROGENY

In *Peeler*, Carol Peeler was federally indicted with twenty-one criminal offenses arising from an alleged scheme of planning illegal tax write-offs for wealthy investors. 909 S.W.2d at 496. She subsequently entered into a plea-bargain agreement under which she pleaded guilty to the felony offense of aiding and assisting the filing of a false and fraudulent tax return, which was one of the twenty-one indicted counts against her. *Id.*; *see* 26 U.S.C.A. § 7206 (West 2011). She was sentenced to five years' probation; a $100,000 fine; and $150,000 in restitution. *Peeler*, 909 S.W.2d at 496. What Peeler's criminal defense attorney failed to tell her was that the government previously had offered

12

her absolute transactional immunity, insulating her from prosecution, in exchange for her testimony against her colleagues. *Id.* Peeler brought a legal-malpractice suit against her criminal defense attorney raising claims for negligence, violations of the Deceptive Trade Practices Act, breach of contract, and breach of warranty. *Id.* The trial court granted Peeler's criminal defense attorney's summary-judgment motion because Peeler's own "illegal acts" in aiding and abetting the filing of fraudulent tax returns were the sole proximate cause of her damages and because she "did not seek to withdraw her [guilty] plea or set aside her conviction." *Id.* at 496, 498.

The supreme court recognized that the sole-proximate-cause bar was an issue of first impression:

> In the context of a criminal matter, we have not addressed whether the client's criminal conduct is, as a matter of law, the sole proximate or producing cause of the client's eventual conviction and damages, such that a legal malpractice claim may not be brought absent a showing that the plaintiff has been exonerated from the criminal conviction, either by direct appeal, post-conviction relief, or otherwise.

*Id.* at 496–97. The supreme court recognized the important public policy justifying the application of the sole-proximate-cause bar: allowing a convicted criminal to take advantage of his own wrong would shock the public conscience, foster disrespect for the courts, and discredit the administration of justice. *Id.* at 497 (quoting with approval *State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 504 (Mo. Ct. App. 1985)). Based on this public policy, the supreme court held that "plaintiffs who have been convicted of a criminal offense may negate the sole

13

proximate cause bar to their claim for legal malpractice in connection with that conviction only if they have been exonerated on direct appeal, through post-conviction relief, or otherwise." *Id.* at 497–98. In short, "convicts may not shift the consequences of their crime to a third party." *Id.* at 498; *see also Saks v. Sawtelle, Goode, Davidson & Troilo, P.C.*, 880 S.W.2d 466, 469 (Tex. App.—San Antonio 1994, writ denied) ("Can a client who contends that his willful criminal act or criminal conviction [for bank fraud] directly resulted from his attorney's negligent services sue that attorney for legal malpractice? We find that the answer in Texas is no."); *Dover v. Baker, Brown, Sharman & Parker*, 859 S.W.2d 441, 451 (Tex. App.—Houston [1st Dist.] 1993, no writ) (holding public policy barred recovery when plaintiff was convicted of tax evasion, which was "inextricably intertwined" with his legal-malpractice claims).

After *Peeler*, the courts of appeals and the United States Court of Appeals for the Fifth Circuit applied the sole-proximate-cause bar to foreclose legal-malpractice suits filed by criminal defendants against "a convict's trial counsel, counsel on direct appeal, or counsel retained in connection with seeking habeas or other post-conviction relief." *Meullion v. Gladden*, No. 14-10-01143-CV, 2011 WL 5926676, at *4 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, no pet.) (mem. op.); *e.g.*, *Huerta v. Shein*, 498 F. App'x 422, 426–27 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 2027 (2013); *Martin v. Sicola*, No. 03-09-00453-CV, 2010 WL 4909987, at *2–3 (Tex. App.—Austin Dec. 1, 2010, no pet.) (mem. op.); *Poledore v. Fraley*, No. 01-09-000658-CV, 2010 WL 3928516, at *3–5 (Tex.

14

App.—Houston [1st Dist.] Oct. 7, 2010, pet. denied) (mem. op. on reh'g); *Rogers v. Harwell*, No. 2-08-376-CV, 2009 WL 1506885, at *3 (Tex. App.—Fort Worth May 28, 2009, pet. denied) (mem. op.); *Martinez v. Alvarenga*, No. 04-07-00283-CV, 2008 WL 441806, at *1 (Tex. App.—San Antonio Feb. 20, 2008, no pet.) (mem. op.); *see also Golden v. McNeal*, 78 S.W.3d 488, 492 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("The sole proximate cause of any malpractice, negligence, or DTPA damages flowing from Golden's conviction [for aggravated sexual assault] was his own criminal conduct."). But the cases applying *Peeler* uniformly arose from a plaintiff's conviction under the penal code or under a federal criminal statute and did not address the sole-proximate-cause bar in the context of civil litigation. *See also, e.g., Jones v. Sulla*, No. 14-11-00269-CV, 2012 WL 2048216, at *1, *3 (Tex. App.—Houston [14th Dist.] June 7, 2012, no pet.) (mem. op.) (holding legal-malpractice plaintiff convicted of theft and felon in possession of a firearm could not maintain claim against criminal defense attorney); *Mendenhall v. Clark*, No. 07-11-00213-CV, 2012 WL 512657, at *1–3 (Tex. App.—Amarillo Feb. 16, 2012, pet. denied) (mem. op.) (holding legal-malpractice plaintiff convicted of "felony offense" could not avoid sole-proximate-cause bar to negligence claim against criminal defense attorney because he produced no evidence of exoneration); *Larson v. Hunt*, No. 01-00-01196-CV, 2002 WL 992410, at *1–2 (Tex. App.—Houston [1st Dist.] May 16, 2002, no pet.) (not designated for publication) (holding legal-malpractice plaintiff's claims for negligence and civil-rights violations against his criminal

15

defense attorneys foreclosed by sole-proximate-cause bar because plaintiff not exonerated of convictions for aggravated sexual assault of a child and indecency with a child); *cf. In re Hinterlong*, 109 S.W.3d 611, 628–29 (Tex. App.—Fort Worth 2003, orig. proceeding [mand. denied]) (op. on reh'g) (recognizing that high-school student's negligence, malicious-prosecution, and defamation claims against school after student expelled for possession of alcohol on school property not foreclosed by sole-proximate-cause bar because student acquitted of criminal minor-in-possession charge). *See generally* 48 Robert P. Schuwerk & Lillian B. Hardwick, *Texas Practice Series: Handbook of Texas Lawyer & Judicial Ethics* § 4:16 (2009) ("*Peeler* . . . remains an authoritative statement of the law in Texas with respect to malpractice claims growing out of criminal cases."). Thus, our question becomes whether the remedial-contempt order against Byrd is tantamount to a criminal conviction thereby barring Appellants' negligence claims under *Peeler*.

## B. Nature of Remedial-Contempt Order

The trial court issued the contempt order against Byrd as a mechanism to enforce its prior discovery order. *See* Tex. R. Civ. P. 215.2(b)(6). Coercive or civil contempt is used to encourage obedience to a previous order; remedial or criminal contempt is available to punish those who disrespect a court's order and to deter others from engaging in disrespectful conduct.[5] *Cadle Co. v. Lobingier*,

___

[5]Contempt is also categorized as direct (contempt occurring in the presence of the court) or constructive (contempt occurring outside the court's

16

50 S.W.3d 662, 667 (Tex. App.—Fort Worth 2001, pets. denied) (en banc op. on reh'g). *See generally Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992) (stating three purposes of discovery sanctions). In a coercive-contempt order, the court exerts its contempt power to persuade the contemnor to obey a previous order and allows the contemnor to avoid punishment by obeying the court's order. *Cadle Co.*, 50 S.W.3d at 667. With a remedial-contempt order, the court punishes the contemnor for improper past acts, and no subsequent voluntary compliance can enable the contemnor to avoid punishment. *Id.*

If a remedial-contempt order imposes a fine of not more than $500 or confinement in the county jail for not more than six months or both, the punishment is characterized as "petty," and the contemnor is not entitled to a jury. *Fahle v. Cornyn*, 231 F.3d 193, 196 (5th Cir. 2000), *cert. denied*, 532 U.S. 1043 (2001); *In re Newby*, 370 S.W.3d 463, 466 (Tex. App.—Fort Worth 2012, orig. proceeding); *see also* Tex. Gov't Code Ann. § 21.002(b) (West 2004) (providing maximum punishments allowed for contempt of a court). But even with a remedial-contempt order imposing a petty punishment, the contemnor is entitled to due process, which means no more than providing the contemnor notice and a meaningful opportunity to be heard. *See Fahle*, 231 F.3d at 196; *In re Reece*, 341 S.W.3d at 365; *In re Miller*, 584 S.W.2d 907, 908 (Tex. Civ. App.—Dallas 1979, orig. proceeding); *Ex parte Stanford*, 557 S.W.2d 346, 348–49 (Tex.

presence). *In re Reece*, 341 S.W.3d 360, 365 (Tex. 2011) (orig. proceeding). It is clear that the trial court's contempt order was constructive.

Civ. App.—Houston [14th Dist.] 1977, orig. proceeding). These requirements are far less extensive than the protections provided a defendant held under a criminal indictment. *See, e.g., Stanford*, 557 S.W.2d at 349. Indeed, Appellants correctly point out that Byrd "was subject to no indictment or criminal information," "had no right to a jury," "had no recourse to pardon or clemency," had no "right to bail," and "had no right of appeal."

Importantly, when a remedial-contempt order is issued by a civil court for the violation of a prior order, this court and the Texas Supreme Court, not the Texas Court of Criminal Appeals, have jurisdiction over any resulting habeas-corpus matter. *See* Tex. Gov't Code Ann. § 22.002(e) (West Supp. 2013), § 22.221(d) (West 2004); *In re Reece*, 341 S.W.3d at 371. Indeed, the Texas Court of Criminal Appeals routinely defers to the Texas Supreme Court in habeas-corpus matters if the challenged contempt order arises out of a civil matter. *In re Reece*, 341 S.W.3d at 373.

## C. APPLICATION TO LUCY LEASING AND PGB

We first address Appellants' argument that Lucy Leasing's and PGB's negligence claims against Appellees cannot be barred by the remedial-contempt order against Byrd: "Obviously, neither Lucy [Leasing] nor PGB were incarcerated, neither failed to respond to discovery, and neither was held in contempt." Appellees respond that all damages arising from the remedial-contempt order are barred by *Peeler*, "regardless of whether those damages were allegedly sustained by Byrd or his companies."

18

As stated above, one public policy underlying *Peeler* is directed toward "preventing convicts from escaping the consequences of, or benefiting financially from, their illegal acts." 909 S.W.2d at 500. Here, Lucy Leasing and PGB were not parties to the divorce action at the time the remedial-contempt order was entered and had not been served with discovery requests. In short, Lucy Leasing and PGB were not participants in the "illegal acts" (i.e., the failure to respond to Simenstad's discovery requests) that led to the remedial-contempt order. Lucy Leasing and PGB were not cited for contempt and cannot be considered "convicts." Because the public policies supporting the sole-proximate-cause bar are not applicable to Lucy Leasing and PGB as non-parties to the remedial-contempt order, *Peeler* does not operate to bar their negligence claims against Appellees. *Cf. Van Polen v. Wisch*, 23 S.W.3d 510, 515–16 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (holding convicted and non-exonerated criminal could not sue criminal defense attorney for negligence or breach of contract because all damages were caused by illegal conduct, but that criminal's parents raised genuine issue of material fact regarding whether criminal defense attorney breached legal-services contract).

### D. APPLICATION TO BYRD

Byrd was not a "convict," having been "convicted of a criminal offense" as was the case in *Peeler*. 909 S.W.2d at 497–98. Indeed, the "exoneration" *Peeler* offers as an exception to the application of the sole-proximate-cause bar is not available in the review of a contempt order issued in a civil case. The only

19

relief from a remedial-contempt order issued by a civil court is a declaration that the court's prior order itself was void or that the contemnor did not receive due process, not that the contemnor did not, in fact, violate the court's prior order. *Ex parte Chambers*, 898 S.W.2d 257, 259–60 (Tex. 1995) (orig. proceeding); *Ex parte Shaffer*, 649 S.W.2d 300, 301–02 (Tex. 1983) (orig. proceeding); *see also In re Krueger*, No. 03-12-00838-CV, 2013 WL 2157765, at *3 (Tex. App.—Austin May 16, 2013, orig. proceeding) (mem. op.) (quoting *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding), and noting that habeas corpus is a collateral attack, which does not determine the guilt or innocence of the relator). Thus, it would be a legal impossibility for a contemnor punished with a remedial-contempt order from a civil court to show the exoneration contemplated by *Peeler*. This legal impossibility renders the public policies announced in *Peeler* inapplicable to a remedial-contempt order arising in a civil case.

Further, the nature of a remedial-contempt order entered in a civil action is not of the same character as a criminal conviction such that *Peeler* would apply. Other than the label "criminal" that routinely is applied to these types of contempt orders, they are not the equivalent of criminal convictions. Indeed, the rights provided to a contemnor are not as extensive or protective as those provided to a defendant charged with a criminal offense. Similarly, any judicial conclusion that a remedial-contempt order entered in a civil case was void must be sought from either this court or the supreme court, not the court of criminal appeals.

20

Finally, it appears that Byrd later was able to purge himself of the contempt portion of the trial court's order. After Byrd paid Simenstad $20,000, the trial court suspended Byrd's confinement. In short, the trial court's order, while originally remedial in nature, was later converted to a civil- or coercive-contempt order by allowing Byrd to "carr[y] the keys of imprisonment in his own pocket," which would foreclose any argument that *Peeler* applied to bar Byrd's subsequent legal-malpractice claims. *See Ex parte Busby*, 921 S.W.2d at 389, 391 (Tex. App.—Austin 1996, pet. ref'd).

For these reasons, we sustain Appellants' sole issue.

## III. CONCLUSION

We conclude that an application of the narrow sole-proximate-cause bar to legal-malpractice claims arising out of a civil remedial-contempt order would be one step too far. The sole-proximate-cause bar applies in the context of legal-malpractice claims brought by a convicted criminal defendant against his criminal defense attorney, whether those actions occurred during the criminal trial, during the appellate process after the criminal conviction, or during any post-conviction relief efforts. The nature of a remedial-contempt order in a civil case differs from a criminal conviction such that the policy considerations underlying the sole-proximate-cause bar do not apply. Therefore, the sole-proximate-cause bar does not foreclose Byrd's legal-malpractice claims to the extent they allege damages arising from Appellees' actions leading to the civil remedial-contempt order. The bar also cannot apply to Lucy Leasing and PGB, who were not parties to the

21

remedial-contempt order.  We reverse the trial court's order granting Appellees a partial summary judgment and remand to that court for further proceedings.  *See* Tex. R. App. P. 43.2(d).


/s/ Lee Gabriel
LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

DELIVERED:  April 17, 2014