**DENY and Opinion Filed August 18, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01343-CV**

**IN THE INTEREST OF S.C. AND K.C., CHILDREN**

**On Appeal from the 256th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-11-16417**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Garcia

The father of S.C. and K.C. (Father) appeals and alternatively seeks mandamus relief from three orders. Two orders find him in contempt for disobeying the trial court's orders to pay Mother's attorney's fees. The third finds him in contempt for violating the court's possession order by returning the children to Mother late on five occasions.

Treating this proceeding as a petition for writ of mandamus, we deny all relief requested.

## I. Procedural History

### A. The Divorce Decree

Father was married to appellee and real party in interest Mother. They have two minor children, S.C. and K.C. Father filed for divorce in 2011.

On June 28, 2016, the trial judge signed a Second Amended Final Decree of Divorce. The Decree contains the following fee shifting provision:

> [Father] is further ORDERED to pay 100% of the attorney's fees incurred by [Mother] as it relates to issues concerning the suit affecting parent-child relationship and the safety and welfare of the children.

### B. The Modification Suit and the Appeal

On July 27, 2016, Father filed a motion to modify the Decree's possession and child-support provisions. He later filed an amended motion that added a request to eliminate the fee-shifting provision from the Decree.

According to Father's appellate brief, Mother began sending Father redacted monthly invoices for her attorney's fees and demanding payment pursuant to the Decree's fee-shifting provision. Father also asserts that the trial court "has ordered and continues to order [Father] to pay any and all of [Mother's] attorney's fees."

In November 2017, the modification suit was tried to the bench. The docket sheet reflects that the trial judge signed the final modification order on May 24, 2018. The order increased Father's possession of the children but did not modify the

Decree's child-support provisions or the fee-shifting provision.[1] *In re S.C.*, No. 05-18-00629-CV, 2020 WL 3046203, at *1 (Tex. App.—Dallas June 8, 2020, pet. denied) (mem. op.).

Father appealed the May 24, 2018 final modification order and subsequent enforcement orders that required him to pay Mother's attorney's fees pursuant to the fee-shifting provision in the Decree. We consolidated those appeals. *Id*. On June 8, 2020, we decided Father's consolidated appeals and rejected all of his arguments. *Id*.

## C.    The Contempt Proceedings and Orders

Meanwhile, the trial court continued to address various disputes between Father and Mother, including disputes about Mother's attorney's fees and about possession of the children.

In November and December 2018, Mother filed six motions for enforcement, none of which appear in the record before us. Only three of those motions are pertinent to the instant proceeding. The orders identify those three motions as follows:

- Motion for Enforcement of December 6, 2018, Invoice And Order Dated December 20, 2018, Granting Mother's August 6, 2018, Invoice;

- Motion For Enforcement Of Orders Granting Mother's SAPCR Fees; and

---

[1] This order is not in the record before us, but our opinion in the appeal from that final order states that this is the case.

•	Motion for Enforcement of Possession and Access, which apparently complained in part that Father returned the children to Mother late several times.

On February 1, 2019,[2] the trial judge heard Mother's six motions. At the end of the hearing, the trial judge orally found Father in contempt for not paying Mother's attorney's fees in the total amount of $123,921.66. Father wrote a check to Mother's lawyers' firm on the spot, and the trial judge stated that Father had purged himself of the contempt relating to attorney's fees. The judge also found that Father violated the possession order five times by returning the children to Mother late. The judge said that he would sentence Father to 180 days in jail for each violation and would assess a $500 fine, with commitment suspended for twenty-four months "pending compliance with the Court's order."

On October 3, 2019, the trial judge signed six written orders embodying his oral rulings. The two orders regarding Mother's motions for enforcement of the payment of attorney's fees note that on February 1 the trial judge found Father in contempt but did not commit Father to confinement in jail because Father paid the attorney's fees at that time. The order regarding the five times Father returned the children late assesses Father's punishment at 180 days in jail and a $500 fine for each violation but suspends Father's commitment and places Father on community

---

[2] Although the cover of the one-volume reporter's record for this hearing recites a date of February 21, 2019, the parties and the computer-generated docket sheet all agree that the hearing actually occurred on February 1, 2019. The reporter's record before us does not include the exhibits admitted at the hearing.

supervision for twenty-four months, conditioned on his compliance with the possession order and his payment of a single $500 fine.

On November 1, 2019, Father filed a notice of appeal reciting his intention to appeal all six of the October 3 orders, but his appellate brief attacks only the two orders concerning nonpayment of attorney's fees and the order about late returns of the children. Father styles his brief "Appellant's Brief and Petition for Writ of Mandamus."

## II. Appeal or Mandamus

Contempt orders are not appealable and are reviewable only by a petition for writ of mandamus or habeas corpus. *In re Janson*, 614 S.W.3d 724, 727 (Tex. 2020) (per curiam) (orig. proceeding). If the contemnor is not jailed, the proper vehicle to challenge the contempt order is a petition for writ of mandamus. *Id.*; *see also In re Rivas-Luna*, 528 S.W.3d 167, 169 (Tex. App.—El Paso 2017, orig. proceeding) ("Courts have held that suspended contempt orders which only require the contemnor to pay attorney's fees and otherwise comply with the trial court's orders do not constitute a sufficient restraint on liberty to allow the contemnor to challenge the contempt order by habeas corpus."). Given the terms of the contempt orders before us, we conclude that the proper vehicle for Father's challenge is a petition for writ of mandamus.

Because Father captioned his appellate brief as both an appellant's brief and a petition for writ of mandamus, we will treat his appeal as a petition for writ of

mandamus. *See CMH Homes v. Perez*, 340 S.W.3d 444, 452–54 (Tex. 2011) (instructing court of appeals to consider the appeal as a petition for writ of mandamus where appellate jurisdiction was lacking and appellant expressly requested mandamus treatment of its appeal); *see also In re W.G.*, No. 02-16-00312-CV, 2017 WL 3634007, at *1 (Tex. App.—Fort Worth Aug. 24, 2017, orig. proceeding) (mem. op.) (treating attempted appeal from contempt order as petition for writ of mandamus).

The contemnor must show that the trial court abused its discretion in order to obtain mandamus relief. *In re Janson*, 614 S.W.3d at 727. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

### III. Contempt for Non-Payment of Attorney's Fees

Father's first issue complains that the two orders finding him in contempt for not paying Mother's attorney's fees are void because the trial judge abused his discretion by characterizing the fees as "child support."

We conclude that Father has not shown an abuse of discretion because (1) the trial judge may have relied on Family Code provisions other than the child-support provision for contempt authority and (2) Father did not address those other provisions in his opening brief.

**A.  The Terms of the Two Contempt Orders Regarding Non-Payment of Attorney's Fees**

For convenience, we label the two orders in question Order #1 and Order #2 based simply on the order in which they appear in the clerk's record. Each Order contains two separate findings of contempt, as detailed below:

| Order #1 | |
| --- | --- |
| **"Order Granting Mother's Motion for Enforcement of December 6, 2018, Invoice And Order Dated December 20, 2018, Granting Mother's August 6, 2018, Invoice"** | |
| **Contempt finding 1.** | **Contempt finding 2.** |
| Father violated an order that required him to pay Mother's lawyers about $17,000 by 5:00 p.m. on December 27, 2018. | In December 2018, Father violated the Decree by failing to pay an invoice he received from Mother's lawyers for about $55,000. |

| Order #2 | |
| --- | --- |
| **"Order Granting Mother's Motion for Enforcement of Orders Granting Mother's SAPCR Fees"** | |
| **Contempt finding 1.** | **Contempt finding 2.** |
| On three occasions, Father violated a July 23, 2018 temporary order requiring him to pay Mother's attorney's fees in the appeal from the final order in the modification suit. All totaled, he failed to pay about $27,000 in invoiced fees. | Father violated an order that required him to pay Mother's lawyers about $24,000 on or before October 5, 2018. |

Neither Order cites any statutes to support the existence of contempt power. However, all four contempt findings contain the following language:

> The Court finds that the [order Father violated] is enforceable by contempt (as child support) as the attorney's fees award therein related

solely [to] the suit affecting the parent-child relationship (child-related issues) and is necessary to ensure the safety and welfare of the children.

We construe this finding to invoke two reasons that the fee order in question is enforceable by contempt: (1) the fees were awarded "as child support," and (2) the fees related solely to the SAPCR and were necessary to ensure the safety and welfare of the children.

## B.      The Parties' Arguments

In his opening brief, Father focuses on the "as child support" language and appears to assume that the trial judge relied solely on Family Code § 157.167(a) and (b) for contempt authority. Under subsection (a), the court shall order the respondent to pay the movant's attorney's fees if the court finds that the respondent has failed to make child-support payments, and the fee award may be enforced with the same remedies as child support, including contempt. TEX. FAM. CODE ANN. § 157.167(a). Subsection (b) provides that the court shall order the respondent to pay the movant's attorney's fees if the respondent violated a child-possession or child-access order. *Id*. § 157.167(b). This fee award may be enforced by contempt if the trial court finds that enforcement of the order that the respondent violated was necessary to ensure the child's physical or emotional health or welfare. *Id*.

Father argues that the Orders' contempt findings are void because the Orders characterize the attorney's fees he failed to pay as "child support" but there was no evidence to support such a characterization under § 157.167(a) and (b). He also cites *Tucker v. Thomas*, 419 S.W.3d 292 (Tex. 2013), for the proposition that attorney's

fees may be awarded as child support only in child-support-enforcement proceedings.

In her brief, Mother mentions § 157.167 in passing, but she defends the Orders primarily based on other Family Code provisions authorizing contempt remedies, specifically § 157.001 and § 105.001. Mother also cites § 109.001, which authorizes temporary orders shifting attorney's fees during the pendency of an appeal.

Section 157.001(b) provides, "The court may enforce by contempt any provision of a temporary or final order." TEX. FAM. CODE ANN. § 157.001(b); *see also In re Koomar*, No. 09-20-00114-CV, 2020 WL 5805571, at *1 (Tex. App.— Beaumont Sept. 30, 2020, orig. proceeding) (per curiam) (mem. op.) ("Any provision of a final SAPCR order may be enforced by contempt.") (citing § 157.001(b)).

Section 105.001 provides, in pertinent part:

> (a) In a suit, the court may make a temporary order . . . for the safety and welfare of the child, including an order:
>
> . . .
>
> (5) for payment of reasonable attorney's fees and expenses.
>
> . . . .
>
> (f) The violation of a . . . temporary order rendered under this section is punishable by contempt and the order is subject to and enforceable under Chapter 157.

TEX. FAM. CODE ANN. § 105.001(a)(5), (f).

And § 109.001 provides, in pertinent part:

(a)     In a suit affecting the parent-child relationship, . . . the court may make any order necessary to preserve and protect the safety and welfare of the child during the pendency of an appeal as the court may deem necessary and equitable. In addition to other matters, an order may:

. . .

(5)     require payment of reasonable and necessary attorney's fees and expenses[.]

*Id.* § 109.001(a)(5).

In his reply brief, Father responds to Mother's arguments by arguing:

- Sections 105.001 and 109.001 cannot support the contempt findings because there is no evidence that the fee orders were necessary to protect the children's safety and welfare.

- Sections 105.001 and 109.001 "do not provide civil and criminal contempt as consequences." Father does not acknowledge § 105.001(f), which expressly authorizes punishment by contempt.

However, his reply brief does not address § 157.001(a) and (b).

## C.     Application of the Law to the Facts

As previously noted, the record does not contain Mother's enforcement motions, so we do not know what Family Code provisions she relied on as bases for the trial court's contempt power in this case. Nor do the Orders themselves cite any specific Family Code provisions as authority for contempt power. This creates a problem for Father, because we must affirm the trial judge's orders if they are correct on any legal theory before the court. *See Guar. Cty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986) (per curiam). And Father bore the burden of bringing

–10–

forward a record sufficient to show his entitlement to mandamus relief. *See Walker v. Packer*, 827 S.W.2d 833, 837 (Tex. 1992) (orig. proceeding).

Father's opening brief attacks only one possible basis for the trial court's contempt power—Family Code § 157.167. But Mother's brief points out that other Code sections, such as § 105.001(f) and § 157.001(b), also authorize contempt in SAPCR cases. Order #1 and Order #2 refer to the children's safety and welfare, which is consistent with a reliance on § 105.001, and they contain nothing inconsistent with a reliance on § 157.001(b). Because Mother's motions are not in the record, Father was required to show that the trial judge abused his discretion under any possible legal theory that could support the contempt power exercised in the Orders. *See Walker*, 827 S.W.2d at 837 (relator must provide record sufficient to show a clear abuse of discretion); *In re Baker*, No. 05-17-01205-CV, 2017 WL 4928192, at *1 (Tex. App.—Dallas Oct. 31, 2017, orig. proceeding) (mem. op.) (mandamus petition must be denied if it fails to address all possible grounds for trial court's ruling); *see also Mallios v. Standard Ins. Co*, 237 S.W.3d 778, 783 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (without summary-judgment motions, appellate court could not tell whether appellant addressed all possible summary-judgment grounds).

Although Father addressed § 105.001(f) in his reply brief, we will not consider arguments raised for the first time in a reply brief. *See Sanchez v. Martin*, 378 S.W.3d 581, 590 (Tex. App.—Dallas 2012, no pet.) ("[W]e cannot consider

matters raised for the first time in a reply brief."); *see also In re TCW Global Project Fund II, Ltd.*, 274 S.W.3d 166, 171 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding [mand. denied]) (applying rule in mandamus context). Moreover, Father has not addressed § 157.001(b) in either of his appellate briefs.

Because Father has not addressed all possible grounds supporting Order #1 and Order #2, we conclude that Father has not shown his entitlement to relief. We therefore overrule Father's first issue.

## IV. Contempt for Returning the Children Late

In Father's second issue, he argues that the trial judge abused his discretion by finding Father in contempt for returning the children to Mother late on five occasions.

### A. The Contempt Order and Father's Arguments

The trial judge found that on five occasions in 2018 Father returned the children to Mother late under the terms of the final modification order. On these five occasions, Father's tardiness ranged from twenty-one minutes to fifty-four minutes. The judge found Father in contempt for five violations of the final modification order.[3] He ordered that Father be fined $500 per violation and committed to county jail for 180 days per violation, with the periods of confinement to run concurrently.

---

[3] The contempt order also finds that Father committed a sixth violation by once allowing a third party to return one of the children to Mother contrary to an agreement between Father and Mother. But the order recites that the trial judge found Father in contempt for only five (unspecified) violations of the modification order. We assume without deciding that the five contempt findings related to the five findings of late returns by Father.

Finally, the judge suspended commitment and placed Father on community supervision for twenty-four months on condition that Father (1) comply with the order on possession and access and (2) pay $500.

Father argues that the trial judge abused his discretion for three reasons: (1) the punishment was too harsh for the violations in question; (2) Father was not on notice that he could be held in contempt for returning the children more than fifteen minutes late; and (3) the trial judge should have imposed a lesser sanctions such as giving Mother additional possession time or allowing her to pick the children up.

Although the appellate record does not contain Mother's motion on which this contempt order is based, we conclude that the record is sufficient for us to reach the merits of Father's arguments. His arguments depend solely on the contents of the contempt order and the Decree, and both of those documents appear in the record.

## B. Applicable Law

Contempt that occurs in the presence of a court is called direct contempt. *In re Reece*, 341 S.W.3d 360, 365 (Tex. 2011) (orig. proceeding). Contempt that occurs outside the presence of a court is called constructive contempt. *Id*. Additionally, contempt is classified as civil contempt if it is remedial and coercive in nature and as criminal contempt if it is punishment for a completed act that affronted the dignity and authority of the court. *Id*. The trial court's contempt order for Father's late returns of the children thus amounts to constructive criminal contempt.

An act must impede, embarrass, or obstruct the court in the discharge of its duties in order to constitute constructive contempt. *Id.* at 366. In this context, "obstruction includes the flagrant disregard of a court order." *Id.* at 366 n.10.

A criminal-contempt conviction for disobedience of a court order requires proof beyond a reasonable doubt of (1) a reasonably specific court order, (2) a violation of the order, and (3) willful intent to violate the order. *In re Janson*, 614 S.W.3d at 727.

Because criminal contempt is a harsh remedy, appellate courts strictly require clarity in the underlying court order. *Id.* A trial court abuses its discretion if it holds a person in contempt for violating an ambiguous order. *Id.* The order must spell out the details of compliance in clear, specific, and unambiguous terms so that the person will readily know exactly what duties or obligations are imposed upon him or her. *Id.* If the order's interpretation requires inferences or conclusions about which reasonable persons might differ, it cannot support a contempt judgment. *Id.*

## C. Application of the Law to the Facts

### 1. Was the criminal contempt finding arbitrary or excessively harsh?

Father first argues that the trial court abused its discretion because the contempt finding and the punishment were arbitrary and excessively harsh "for a handful of late drop offs." However, he cites no authority that supports his position. He discusses a single case in which the trial court imposed a similar criminal-contempt punishment for more numerous violations of a possession order. *See In re*

–14–

*Zevallos*, No. 14-11-01080-CV, 2012 WL 359301, at \*3 (Tex. App.—Houston [14th Dist.] Feb. 2, 2012, orig. proceeding) (per curiam) (mem. op.). But the relator in that case did not challenge the criminal-contempt finding as arbitrary or excessive, and the court of appeals rejected every argument she did make, so *Zevallos* does not aid Father's cause.

Father does not dispute that he returned the children to Mother late on the occasions in question. As we discuss below, returning the children violated the clear terms of the modification order. And deterrence is a proper purpose of criminal contempt. *See Byrd v. Phillip Galyen, P.C.*, 430 S.W.3d 515, 523–24 (Tex. App.— Fort Worth 2014, pet. denied) (noting that criminal contempt is available "to deter others from engaging in disrespectful conduct") (footnote omitted). We conclude that Father has not demonstrated that the trial court's contempt finding and the punishment imposed were so harsh or arbitrary as to amount to an abuse of discretion. *See* TEX. GOV'T CODE ANN. § 21.002(a), (b).

### 2. Was the modification order ambiguous about Father's duties regarding the return of the children?

We next address Father's fair-notice complaint. He argues that the trial judge found him in contempt "for the occasions he dropped off the children more than 15 minutes late." Father further argues that "[t]his language is not in the order" and he "could not know that he could be held in contempt for being more than 15 minutes late."

Father's argument fails because it mischaracterizes the trial judge's contempt finding. The written contempt order found that Father violated the possession order by returning the children to Mother "late—after the ordered time(s) for the children's return." In other words, the trial judge found Father in contempt for returning the children late—not for returning them more than fifteen minutes late. Father apparently bases his argument on the judge's oral comment at the contempt hearing that "sometimes parties run a little bit late, and fifteen minutes is appropriate generally, but beyond that [is] problematic" and the judge's oral warning to Father that "you cannot be more than fifteen minutes late . . . unless there's some emergency that's happened." But the possession order, as quoted in the contempt order, requires Father to return the children to Mother at her residence at specific times, without any grace periods. Thus, Father was on notice that failing to return the children to Mother at her residence at the specific times violated the order.

We conclude that the modification order clearly specified Father's duties regarding the return of the children. Accordingly, we reject Father's fair-notice argument.

### 3. Did the trial judge abuse his discretion by finding Father in contempt instead of using a less harsh remedy?

Finally, Father argues that the trial judge abused his discretion by not using a less harsh alternative to criminal contempt. Specifically, he suggests that the trial judge could have given Mother additional possession time to make up for the late drop-offs or could have "allowed [Mother] to pick up the children."

Father's arguments do not show an abuse of discretion. He cites no authority for the premise that a trial judge must impose lesser sanctions against someone who has violated a court order before employing criminal contempt. Again, deterrence is a proper purpose of criminal contempt. *See Byrd*, 430 S.W.3d at 523–24. The trial judge could have reasonably concluded that giving Mother additional possession time was not sufficient to deter future violations.

As for Father's suggestion that the trial judge could have solved the problem by allowing Mother to pick the children up at the end of Father's possession periods, the record before us does not show that Father presented this argument to the trial court. Accordingly, we do not consider it on mandamus. *See In re Am. Optical Corp.*, 988 S.W.2d 711, 714 (Tex. 1998) (orig. proceeding) (per curiam).

## D.    Conclusion

We overrule Father's second issue.

## V.    Disposition

Construing Father's appeal as a petition for writ of mandamus, we deny Father's request for mandamus relief.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

191343F.P05